UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNION HOME MORTGAGE, | ) |
| Plaintiff, | ) Case No: 1:24-cv-2148 |
| vs. | ) |
| ROBERT KUEHNE, | ) |
| Defendant. | ) |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Union Home Mortgage ("Union Home"), by counsel, and for its Complaint for Injunctive Relief and Damages against Defendant, Robert Kuehne ("Kuehne"), alleges and states as follows:

**NATURE OF THE ACTION**

1. Union Home brings this action against Kuehne, its former employee, for Kuehne's breaches of his contractual covenants and common-law duties to Union Home.

**PARTIES**

2. Union Home is an Ohio corporation with its principal place of business in Strongsville, Ohio.

3. Upon information and belief and at all relevant times, Kuehne is a resident of Texas.

**JURISDICTION AND VENUE**

4. Jurisdiction is proper in federal court pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. The Court also has supplemental jurisdiction over Union Home's contractual and state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because the Union Home employment agreement that Kuehne signed on or about November 3, 2023 (the "Agreement") provides for personal jurisdiction in Ohio and requiring that all disputes pertaining to the Agreement be filed in state or federal courts in Ohio, a provision Kuehne agreed to. A true and accurate copy of the Agreement is attached hereto, incorporated herein, and marked as **Exhibit A**.

## FACTUAL BACKGROUND

*Kuehne's employment and contractual obligations to Union Home.*

7. Paragraphs 1-6 are incorporated herein by reference as if fully restated herein.

8. Union Home is in the business of providing homeowners and prospective home buyers with mortgage and refinance loan products.

9. On or about November 3, 2023, Kuehne was hired by Union Home.

10. As part of the hiring process, Union Home and Kuehne entered into the Agreement.

11. Union Home invests significant time, effort, and resources into recruiting, training, and retaining its branch managers and loan officers.

12. Union Home takes reasonable measures to keep this information secret and out of its competitors' hands. Union Home does so, for example, by requiring employees (such as Kuehne) to sign employee agreements similar to the Agreement.

13. As a loan officer, Kuehne was given access to and was in a position of trust with regard to the goodwill between Union Home and its customers, prospective customers, and referral sources.

14. When Kuehne began working for Union Home, his job duties included generating and originating loans as he was a team lead loan officer for Union Home. In addition, Kuehne was responsible for hiring, training, and directing the retail sales team to achieve growth and production goals while operating within Union Home's specific policies and procedures.

15. Kuehne acquired confidential, proprietary, and trade secret information regarding, among other things, Union Home's customers, prospective customers, and referral sources, as well as Union Home's sales and marketing strategies, lending practices, and risk tolerances.

16. Kuehne was a trusted employee of Union Home, who was given access to the goodwill Union home has with its customers, prospective customers, and referral sources, as well as Union Home's confidential and trade secret information, including confidential information about Union Home's customer, prospective customers, and referral sources.

17. Union Home has a legitimate business interest in protecting its confidential and or trade secret information, goodwill, and customer relations.

18. In the Agreement, Kuehne acknowledged that:

> Legitimate Interests. Due to the nature of the business of the Company, certain employees, including Employee, are provided access to confidential and/or "trade secret" information that is proprietary to the Company. Likewise, via their employment, certain employees, including Employee, are introduced to, given the opportunity to develop personal contacts with, and actually develop an advantageous familiarity with the Company's customers, prospective customers, and referral sources. If this confidential or "trade secret" information or these contacts and familiarity were made available to the Company's competitors or other individuals outside the Company, or otherwise used against the Company's interests, it would provide a competitor with an unfair competitive advantage and likely result in a loss of business or competitive position for the Company and/or harm the Company's goodwill and investment in developing and maintaining its business relationships. The parties expressly agree that the terms of this Agreement are reasonable, enforceable, and necessary to protect the Company's interests and will not prevent Employee ability from earning a livelihood.

(Ex. A at 4.)

19. With respect to confidential information, Kuehne agreed as follows:

> Confidential Information. Employee shall not (i) use any Confidential Information for any purpose other than on behalf of the Company, or (ii) directly or indirectly disclose, divulge, reveal, report, publish or transfer, for any purpose whatsoever, any Confidential Information to any third party. Employee agrees that all Confidential Information, however stored or memorialized, is the sole property of the Company and shall be immediately returned to the Company upon request or the termination of Employee's employment, whichever comes first, and no copies shall be retained by Employee. For purposes of

> this Agreement, "Confidential Information" shall include confidential or proprietary information or trade secrets of the Company, including, but not limited to, written or electronic information: (i) disclosed to Employee or known by Employee as a result of his or her employment, (ii) which is not generally known, and (iii) which relates to or concerns the Company's business, technology, information systems, computer programs, software, customers, prospective customers, referral sources, pipelines, customer relationship management databases, suppliers, vendors, sales, marketing or finances. Confidential Information shall also include all information and matters specifically designated as proprietary and/or confidential by the Company's customers, referral sources, or other business partners.

(*Id.* at 5–6.)

20. In almost all employee agreements, Union Home seeks to protect its legitimate business interests by having employees (such as Kuehne) agree to limited non-solicitation provisions to further protect its confidential information, which includes customer lists, pricing, and referral sources.

21. In the Agreement, Kuehne agreed to the following limited non-solicitation provisions concerning customers, referral sources, and Union Home employees:

> **Limited Non-Solicitation of Customers.** During the Restricted Period and for one (1) year thereafter, Employee will not, on behalf of themselves or a Competitive Entity, directly or indirectly, solicit or divert (or attempt to solicit or divert) or accept competitive business from any customer or identified prospective customer of the Company: (i) with whom Employee had contact; or (ii) about whom Employee obtained or had access to Confidential Information, in conjunction with their employment in the thirty-six (36) months preceding the termination of Employee's employment with the Company
>
> **Limited Non-Solicitation of Referral Sources.** During the Restricted Period, on behalf of themselves or a Competitive Entity, directly or indirectly, solicit or divert (or attempt to solicit or divert) or accept competitive business from any Referral Source of the Company. For the avoidance of doubt, this prevents Employee from, directly or indirectly, accepting referrals from Referral Sources of the Company. For purposes of this provision, a "Referral Source" is a realtor or builder who referred at least one customer to Employee that closed a loan with the Company in the twelve (12) months preceding the termination of Employee's employment with the Company.

(*Id.*)

22. The Agreement required Kuehne to not use any non-approved devices or accounts to conduct business on behalf of Union Home. Specifically, the Agreement's Electronic Resources provisions indicates:

> **Electronic Resources.** Employee agrees not to use any electronic resources of the Company for any business purpose other than Company-approved business. Such electronic resources include, but are not limited to: devices, networks, email accounts, cloud storage, apps and software provided or made accessible by the Company. Furthermore, Employee agrees to refrain from using any devices, networks, email accounts, cloud storage, apps and software that have not been provided, made accessible, or specifically approved by the Company for Company business. By way of example, Employee agrees not to send information regarding the Company's customers or prospective customers to an external email account or store such information on a personal cloud storage account. This provision is in addition to and not in lieu of Company policies on this subject. Finally, Employee consents to receive business-related calls and text messages on their cellular telephone, whether auto-generated or otherwise, unless and until they provide the Company's Human Resources Department with a written revocation of that consent.

(*Id.* at 7.)

23. When Kuehne executed the Agreement, he accepted a one-time contingent bonus and a guarantee against commissions, which totaled $120,000.00 (collectively, the "Bonus"). The Bonus was conditional in the sense that if Kuehne did not remain employed with Union Home for two (2) years he would be required to repay a substantial portion of the Bonus.

24. The Agreement further provides a vesting schedule and a provision requiring repayment of the unearned Bonus in the event Kuehne did not remain employed with Union Home for two (2) years:

> Repayment of Unearned Bonus. Employee agrees to repay the Bonus to the Company in the following circumstances and according to the following terms:
>
> a. Repayment Due to Termination of Employment. If Employee's employment with the Company ends for any reason prior to the second anniversary of the Effective Date, Employee agrees to repay the Guarantee to the Company in according with the vesting schedule set forth in 4(b).
>
> b. Vesting Schedule.
>
>   i. 25% of the paid amount shall be forgiven Six (6) Months after the Effective Date.
>   ii. 50% of the paid amount shall be forgiven Twelve (12) Months after the Effective Date.
>   iii. 75% of the paid amount shall be forgiven Eighteen (18) Months after the Effective Date.
>   iv. 100% of the paid amount shall be forgiven Twenty-four (24) Months after the Effective Date.

(Ex. A at 4.)

25. The Agreement is a valid and enforceable contract between Union Home and Kuehne.

26. Union Home performed its material obligations under the Agreement.

27. Kuehne owed and continues to owe legal and contractual obligations to Union Home pursuant to the Agreement.

**Kuehne uses a non-Union Home account to conduct business on behalf of Union Home.**

28. Union Home recently conducted a review of Kuehne's company-issued email account and found a variety of misconduct related to Union Home's proprietary and confidential

information, including Kuehn's use of his personal email account to conduct Union Home business.

29. Kuehne sent multiple emails with customer, client, and/or borrower information from his Union Home email account to his personal email account and then conducted Union Home business on his personal email account.

30. The information Kuehne improperly sent to himself and stored on a personal email account is precisely the type of confidential and proprietary information he would need to solicit of Union Home's customers, prospective customers, and referral sources for his own or any subsequent employer's benefit.

31. The Agreement's confidentiality and electronic resources provisions specifically provide that customer information is confidential and is not to be used for any purpose other than for Union Home's business purposes, and specifically bars the use of personal accounts to convey this information. (*Id.* at 5–6, 7.)

32. The information Kuehne improperly sent to and utilized from a personal email account belongs to Union Home and is confidential and constitutes trade secret information.

33. There was no legitimate Union Home business purpose for Kuehne to improperly utilize his personal email account to house or transact in confidential and proprietary information in violation of the Agreement.

34. Union Home believes that Kuehne is using Union Home's confidential and trade secret information to close loans or attempt to close loans for his own or for a direct competitor's benefit.

*Kuehne voluntarily resigns from Union Home without repaying his Bonus.*

35. Kuehne voluntarily resigned from his employment with Union Home on September 2, 2024 — only 10 months after he began working for Union Home.

36. Kuehne would have needed to work for Union Home until November 3, 2025, for the Bonus to fully vest.

37. Kuehne was not employed for the required vesting time.

38. Pursuant to the Agreement's vesting schedule, Kuehne's ten-month term of employment warrants only a 25% reduction in the amount of the Bonus to be repaid to Union Home.

39. As a result, Kuehne owed Union Home at least $67,974.67 of the Bonus.

*Kuehne solicits his Loan Officer Assistant to leave her employment at Union Home.*

40. Kuehne began working for a competitor of Union Home following his resignation.

41. On September 3, 2024, Amber Waling, Kuehne's loan officer assistant, resigned from her employment at Union Home.

42. Ms. Waling now works for the same competitor of Union Home that Kuehne works for.

*Union Home makes a good faith, but unsuccessful attempt to secure repayment of the unearned portion of the Bonus.*

43. The Agreement required that Kuehne repay any unearned portion of the Bonus within fifteen (15) days after he voluntarily resigned. Kuehne resigned from his employment with Union Home on September 2, 2024.

44. Kuehne was required to repay any unearned portion of the Bonus by September 17, 2024. Kuehne failed to do so.

7

45. On or about September 24, 2024, Union Home's counsel sent a letter to Kuehne in an attempt to collect the unearned portion of the Bonus Kuehne owes to Union Home. A true and accurate copy of the letter is attached hereto, incorporated herein, and marked as **Exhibit B**.

46. Specifically, the letter indicates:

> The total amount of the Bonus was $120,000. While the Agreement does not require as much, Union Home will exclude amounts attributable to taxes from the amount to be repaid as well as any other reductions provided for by contract. After these reductions, you owe $67,974.67 to Union Home. And, per the terms of the Agreement, you were to repay this amount in full within 15 days of your resignation, but have failed to do so.

(Ex. B, at 1.)

47. To date, Kuehne has not repaid Union Home for the unearned portion of the Bonus.

48. Union Home has suffered financial loss as Kuehne has unlawfully retained an unearned amount of the Bonus, totaling at least $67,974.67.

***Kuehne's September 27, 2024, Response to Union Home's Requests***

49. Kuehne responded to Union Home's request for payment indicating he had recently filed bankruptcy. A true and accurate copy of Kuehne's bankruptcy discharge is attached hereto, incorporated herein, and marked as **Exhibit C**.

50. Kuehne's discharge from bankruptcy was on August 9, 2024. (Ex. C.)

51. Kuehne voluntarily resigned from his employment on September 2, 2024.

52. Kuehne's debt to Union Home is not discharged by the bankruptcy court's order.

***Litigation is necessary to protect Union Home's legitimate interests and to recover the unearned portion of the Bonus.***

53. Union Home has been unsuccessful in its attempt to recover the unearned portion of the Bonus owed to it by Kuehne.

54. Union Home believes its confidential information and trade secrets are being used for the benefit of Kuehne and/or a direct competitor as Union Home's investigation into Kuehne's

Union Home email account revealed confidential information and trade secrets being sent to Kuehne's private email account.

55. Union Home has determined it has no other option outside of filing this lawsuit.

56. Paragraph 18 of the Agreement that Kuehne voluntarily entered into provides that Kuehne would be responsible for Union Home's reasonable attorneys' fees incurred in conjunction with a successful suit to enforce the Agreement. (Ex. A, at 7.)

57. Union Home has been required to retain the services of its undersigned counsel for the purposes of protecting its interests under the Agreement and has incurred and will continue to incur attorney fees in an amount yet to be determined as a result of Kuehne's multiple breaches of the Agreement.

58. Union Home has suffered financial loss as a result of Kuehne's actions.

## COUNT I: BREACH OF CONTRACTUAL DUTY OF CONFIDENTIALITY

59. Paragraphs 1-58 are incorporated herein by reference as if fully stated herein.

60. The Agreement required Kuehne to refrain from disclosing Union Home's confidential and/or trade secret information.

61. At the time Kuehne resigned from his employment with Union Home, he was improperly storing Union Home's confidential information and trade secrets related to customer, client, and borrower information in a personal email account and conducting Union Home business from that account in violation of the Agreement.

62. On information and belief, Kuehne continues to have access to the account containing Union Home's confidential information and trade secrets.

63. On information and belief, Kuehne has and/or intends to use or disclose Union Home's confidential information and trade secrets to its detriment.

9

64. Specifically, prior to leaving Union Home, Kuehne improperly stored personally identifiable information related to customers, prospects, or referral sources on his personal email account.

65. Kuehne's actions breached his contractual confidentiality obligations to Union Home, as reflected in Paragraph 11 of the Agreement wherein he agreed not to use Union Home's confidential information and trade secrets for any purpose other than on behalf of Union Home, and further, agreed to not disclose, divulge, reveal, report, publish, or transfer said information for any purpose whatsoever.

66. The breach by Kuehne of his confidentiality obligations pursuant to the Agreement has caused and will continue to cause injury, loss, and damage to Union Home and continuation of these breaches will result, unless restrained, in immediate and irreparable injury, loss, and damage to Union Home.

67. Union Home seeks damages for Kuehne's breach of the confidentiality provision in an amount to be established at trial, reasonable attorney's fees incurred in conjunction with the enforcement of the Agreement, an order requiring Kuehne to comply with the terms of the Agreement, and any other relief just and proper in the circumstances.

**COUNT II: BREACH OF CONTRACTUAL DUTY OF REPAYMENT OF THE BONUS**

68. Paragraphs 1-67 are incorporated herein by reference as if fully restated herein.

69. The Agreement contained a Bonus, totaling of $120,000.

70. The Bonus was to be repaid in its entirety if Kuehne did not remain employed by Union Home for two (2) years. Kuehne would have needed to work for Union Home until November 3, 2025, for the Bonus to fully vest.

71. Kuehne voluntarily resigned from his employment with Union Home on September 2, 2024.

72. Kuehne did not remain employed by Union Home for the requisite amount of time for the Bonus to fully vest.

73. Kuehne has not repaid to Union Home the portion of the Bonus owed to Union Home pursuant to the Agreement.

74. The breach by Kuehne of his repayment obligations pursuant to the Agreement has caused Union Home financial harm.

75. Kuehne's bankruptcy does not discharge the repayment as Kuehne's repayment obligation did not accrue until after the discharge order.

76. Union Home seeks damages for Kuehne's failure to repay the Bonus in an amount not less than $67,974.67, reasonable attorney's fees incurred in conjunction with the enforcement of the Agreement, and any other relief just and proper in the circumstances.

## COUNT III: BREACH OF COMMON LAW DUTY OF LOYALTY

77. Paragraphs 1-76 are incorporated herein by reference as if fully restated herein.

78. While employed by Union Home, Kuehne owed a common law duty of loyalty to Union Home.

79. Kuehne's employment with Union Home ended upon his resignation on September 2, 2024.

80. While employed by Union Home, Kuehne was required to put forth his best efforts on behalf of the company. Kuehne failed to do so when he sent Union Home's confidential information and trade secrets, including his retention of confidential customer, prospect, and referral source information to his personal email account. Kuehne further failed to put forth his

best efforts on behalf of the company through his use of an impermissible email account to house the confidential information and trade secrets and conduct Union Home business.

81. Kuehne's actions breached his common law duty of loyalty to Union Home.

82. Kuehne's breaches of his common law duty of loyalty have caused injury, loss, and damage to Union Home.

83. Union Home requests an order from the Court requiring Kuehne to uphold his common law duty of loyalty and refrain from disclosing Union Home's confidential information and trade secrets indefinitely.

## COUNT IV: UNJUST ENRICHMENT

84. Paragraphs 1-83 are incorporated herein by reference as if fully restated herein.

85. The Agreement contained a contingent bonus, totaling $120,000.

86. Kuehne and Union Home agreed that a significant portion of the contingent bonus was to be repaid if Kuehne did not remain employed by Union Home for two (2) years. Kuehne would have needed to work for Union Home until November 3, 2025, for the bonus to fully vest.

87. Kuehne voluntarily resigned from his employment with Union Home on September 2, 2024.

88. Kuehne did not remain employed by Union Home for the requisite amount of time for the contingent bonus to fully vest.

89. Kuehne has not repaid to Union Home the unearned portion of the contingent bonus owed to Union Home.

90. Kuehne has been unjustly enriched by Union Home's payment of the contingent bonus as he has not earned the full amount.

91. Union Home has suffered financial harmed by Kuehne's unjust enrichment.

12

92. Union Home seeks damages for Kuehne's failure to repay the Bonus in an amount not less than $67,974.67, and any other relief just and proper in the circumstances.

## **PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

93. Paragraphs 1-92 are incorporated herein by reference as if fully restated herein.

94. As a direct and proximate result of Kuehne's conduct, Union Home has suffered, and will continue to suffer, irreparable harm in the loss of business opportunities as well as harm to its goodwill and confidential information in an amount that cannot be fully, completely, and adequately remedied at law.

95. Kuehne has and continues to willfully violate the Agreement through acts which include but are not limited to taking Union Home's confidential information before ending his employment with Union Home.

96. Without injunctive relief against Kuehne *and all those in active concert or participation with him*, he will continue to harbor Union Home's confidential information, thereby causing Union Home immediate and irreparable harm. In contrast, no harm will accrue to Kuehne by entry of injunctive relief as Kuehne never had the right to violate his obligations to Union Home.

97. Injunctive relief is appropriate because protection and maintenance of Union Home's proprietary information, including its trade secrets, is a vital and legitimate business concern. In the absence of injunctive relief, it is highly unlikely that Union Home will have the ability to precisely calculate the extent of the harm caused by Kuehne's actions.

98. The public interest will not be harmed if an injunction is granted.

99. Given Kuehne's willful and deliberate violations of his obligations, any bond required to be posted by Union Home should be *de minimis.*

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Union Home Mortgage respectfully requests that the Court grant the following relief in its favor and against Defendant, Robert Kuehne:

1. Issue a preliminary and then permanent injunction against Kuehne *and all those in active concert or participation with him* requiring specific performance of the terms and conditions of the Agreement and compliance with the Defend Trade Secrets Act, the Ohio Uniform Trade Secrets Act, and the common law;

2. Enter judgment in favor of Union Home and against Kuehne for violating the Compensation Agreement and order Kuehne to repay Union Home the portion of the Bonus owed to Union Home, totaling at least $67,974.67;

3. Enter judgment in favor of Union Home and against Kuehne on all counts in an amount to be determined at trial and order Kuehne to pay Union Home's reasonable attorneys' fees as required by paragraph 18 of the Agreement;

4. Enter judgment in favor of Union Home and against Kuehne on all counts in an amount to be determined at trial and order Kuehne to pay damages to Union Home, including, but not limited to, compensatory and punitive damages, costs, and interest as provided for by statute and common law; and

5. Grant all other relief the Court deems just and proper in the circumstances.

14

Dated: <u>December 10, 2024</u>.

                    Respectfully submitted,

                    **BARNES & THORNBURG LLP**

                    */s/ Jason Clagg*
                    Jason Clagg, Ohio Atty. No. 97303
                    Cody Woods, Ohio Atty. No. 103642
                    888 S. Harrison St., Suite 600
                    Fort Wayne, Indiana
                    Phone: 260-423-9440
                    Fax: 260-424-8316
                    jason.clagg@btlaw.com
                    cwoods@btlaw.com

                    *Counsel for Plaintiff*